UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL CASE NO. 06-17 |
| v. | **FILED** |
| MARIA TEVES-UPSHUR, | FEB 0 9 2006 |
| Defendant. | NANCY MAYER WHITTINGTON, CLERK<br>U.S. DISTRICT COURT |

## STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, defendant, Maria Teves-Upshur, under penalty of perjury, agrees and stipulates to the following facts in connection with her plea of guilty as follows:

### Background

At all times relevant to this offense, defendant Maria Teves-Upshur was a full-time secretary for the Department of Nursing at the Hospital. As Unit Secretary for the Department of Nursing, she was responsible for submitting the time and attendance cards of all nurses employed by the Hospital in order for them to be paid. Among her duties, the defendant verified that nurses in fact worked their shifts; approved their time cards; and recorded the time and attendance information for staff nurses into the University computer system. Upon calculation by the computer system of the nurses' hours and rate, it was the defendant's responsibility to hand-deliver this printout to the accounts payable department of the Hospital, which would then issue the nurses' paychecks. In addition, the defendant was responsible for verifying the number of hours temporary, or "per diem," nurses worked at the Hospital. The defendant would input the information as well in order to verify invoices for payment to the nursing agencies who supplied temporary nurses. At all times relevant

to this offense, the defendant reported, either directly or indirectly, to the Director of Nursing.

Manuel R. Lagmay ("Lagmay") was the president, chief executive officer, director, and shareholder of International Health Care Services, Inc. ("IHSI"), otherwise known as HealthForce One, a corporation with its principal place of business prior to on or about September 2004, at 1108 K Street, N.W., Washington, D.C. IHSI is a health care agency supplying temporary nurses to hospitals in and around the District of Columbia and elsewhere, and a recruiting service for hospitals seeking to find qualified nurses overseas to ease the nursing shortage in the area.

Accountant is an alien who was sponsored and brought by Lagmay from the Phillippines to the United States to assist in the books and record-keeping of IHSI. At Lagmay's direction, Accountant maintained the accounting records of IHSI in QuickBooks, a common software program used to establish and maintain accounting records, including the income statement, payroll, accounts payable, and other expenditures of a business.

Howard University is a preeminent, historically black university, established by an act of the United States Congress in 1867. The University operates a hospital within the District of Columbia, known as Howard University Hospital ("Hospital"). The Hospital participates in federal healthcare programs, including Medicare (a medical insurance program that provides health insurance for persons over the age of 65, as well as certain persons with disabilities over the age of 65, without regard to financial means or income) and Medicaid (a medical insurance program that provides health insurance for certain persons with low incomes and limited resources). In addition, the Hospital receives a percentage of its annual operating income from direct federal appropriation and approximately 30 percent of payment for contract labor comes from federal monies.

Beginning in or about July 2000 and continuing through in or about December 2003, in the District of Columbia and elsewhere, defendant Maria Teves-Upshur conspired with Lagmay to

defraud the Hospital.

## The Scheme

As the unit secretary for the Department of Nursing, the defendant was responsible for verifying the number of hours temporary, or "per diem" nurses worked at the Hospital. She would input this information into the University's system in order to verify invoices for payment to the nursing agencies who supplied temporary nurses. While she was in this position, the defendant received kickbacks from IHSI for her assistance in obtaining a contract to staff the Hospital with temporary nurses supplied by IHSI. It is a federal crime to offer or receive a kickback in connection with a federal health care program.

In or about July 2000, Lagmay offered, and the defendant accepted, a sum of $3,000-$5,000 to arrange a meeting between Lagmay and the Director of Nursing, the defendant's supervisor. In addition, Lagmay offered, and the defendant accepted, a kickback of an additional $5 for every shift an IHSI nurse worked at the Hospital if the defendant assisted in the procurement of a contract. Pursuant to this secret agreement, the defendant arranged the meeting and urged her supervisor to consider IHSI as a service provider. At no time did either the defendant or Lagmay disclose the financial arrangement between them. On or about August 24, 2000, at the defendant's recommendation, the Hospital entered into a staffing agreement with IHSI. Pursuant to this agreement, IHSI submitted for and received in excess of $2,700,000.00 for claimed nurses provided to the Hospital.

From between in or about January 2001 and in or about December 2002, the defendant received monies from the accounts of IHSI as kickbacks for her services in obtaining the Hospital contract. For example, on or about May 13, 2002, the defendant received and deposited a $1,070 IHSI check drawn from its account at Bank of America for shifts worked by IHSI temporary nurses

at the Hospital pursuant to the staffing agreement.

In early 2003, Lagmay not only continued to pay the defendant pursuant to the secret agreement above, but offered additional payments for the defendant's participation in the submission of fraudulent invoices for IHSI nurses who never in fact worked the claimed shifts. Lagmay offered, and the defendant accepted, approximately 40 percent of the total amount of the fraudulent invoices in exchange for the defendant agreeing to process the invoices, certify them as valid, and submit them to her supervisor for payment. In order to conceal the nature of IHSI's payments to the defendant, the checks to the defendant were erroneously classified as "loan payments." In fact, the defendant never loaned Lagmay or IHSI any amount of money, and the checks received by the defendant from IHSI were entirely the proceeds of a conspiracy to defraud.

### Additional Fraud

Defendant Teves-Upshur, in addition to conspiring with Lagmay in the scheme described above, submitted on her own fraudulent time and attendance cards on behalf of unwitting staff nurses. Between on or about January 2001 and on or about December 2002, Teves-Upshur presented to the payroll office on numerous occasions what she claimed to be "supplemental" time and attendance cards for certain staff nurses employed by the Hospital. The "supplemental" time cards purported to reflect additional hours that had inadvertently been left out of the original time cards submitted by Teves-Upshur due to the failure of said nurses to report the additional hours in a timely fashion or in the staffing office's failure to process the necessary paperwork to verify the hours.

In fact, the nurses in question never worked the additional hours reflected on the supplemental time cards. Those cards were fraudulently prepared by Teves-Upshur without the knowledge or permission of the nurses in whose names they were submitted for the sole purpose of

Teves-Upshur's own enrichment. Because the supplemental cards were submitted to the payroll office after the end of the regular pay cycle, the office would prepare a second check for each nurse in question and Teves-Upshur would personally collect those checks, falsely representing that she would distribute the checks directly to the nurses. Instead, she took the checks for herself and forged the nurses' signatures in order to deposit the funds directly into bank accounts maintained or controlled by Teves-Upshur. In sum, Teves-Upshur stole $120,645 through the submission of fraudulent time cards.

Respectfully submitted,

KENNETH L. WAINSTEIN
United States Attorney

By: _____
JEANNIE RHEE
Assistant United States Attorney
Fraud & Public Corruption Section
555 Fourth Street, N.W., Room 5255
Washington, DC 20530
(202) 514-9832

**Defendant's Acknowledgement**

I have read this plea agreement. I fully understand this agreement and agree to it without reservation. I do this voluntarily and of my own free will, intending to be legally bound. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this agreement fully. I am pleading guilty because I am in fact guilty of the offense(s) identified in paragraph one.

I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in this plea agreement. I am satisfied with the legal services provided by my attorney in connection with this plea agreement and matters related to it.

Date: 2/09/2006

_____
Maria Teves-Upshur
Defendant

**Attorney's Acknowledgement**

I have read each of the seven pages constituting this plea agreement. These pages accurately and completely sets forth the entire plea agreement. I concur in my client's desire to plead guilty as set forth in this agreement.

Date: 2-9-06

_____
Gary M. Sidell, Esq.
Attorney for the Defendant

8